**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 13-187-DLB**

**TIMOTHY GILLEY**                                                                               **PLAINTIFF**

vs.                    **MEMORANDUM OPINION & ORDER**

**CAROLYN COLVIN, Acting Commissioner
Social Security Administration**                                              **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**I.    Introduction**

This matter is before the Court on Plaintiff's and Defendant's cross-motions for summary judgment. (Docs. # 11 & 12). For the reasons stated below, the Court will affirm the Commissioner's judgment, as it is supported by substantial evidence.

**II.    Factual and Procedural History**

Plaintiff Timothy Gilley comes to the Court after many years of experience with the Social Security disability application process. He first applied for supplemental security income on November 7, 2007, but his application was denied initially, upon reconsideration, and in a written opinion by Administrative Law Judge (ALJ) Edwin W. Tyler. While Plaintiff unquestionably suffers from cystic fibrosis, a genetic disease that afflicts the cardiovascular system, ALJ Tyler determined that Plaintiff was able to perform a range of light work. (Doc. # 8-1, at 52). Accordingly, Plaintiff was not entitled to supplemental security benefits.

1

Undeterred, Plaintiff again filed for disability benefits on November 24, 2010. (*Id.* at 11). That application was also denied initially, upon reconsideration, and in a written opinion, this one authored by ALJ George L. Evans, III. (*Id.*) Evans's opinion, like that of the first ALJ, concluded that Plaintiff could perform light work despite his obvious physical limitations. (*Id.*) ALJ Evans, aware of the precedential effect of the prior ALJ's ruling, wrote that "[n]o evidence has been introduced to warrant reopening and reversing that decision." (*Id.*)

What has never been questioned is that Plaintiff suffers from a serious illness. Cystic fibrosis has restricts Plaintiff's ability to work, and this fact is reflected in the RFC. (*See id.* at 14). What is in dispute is whether Plaintiff's limitations are so severe that they prevent gainful employment. ALJ Evans concluded that Plaintiff could work, for two reasons. First, the record indicated that Plaintiff's condition, while serious, allowed Plaintiff to hold certain physically limited positions. Second, the Sixth Circuit's holding in *Drummond v. Commissioner*, 126 F. 3d 37 (6th Cir. 1997) bound ALJ Evans to the prior ALJ's determination, unless ALJ Evans found a material change in circumstances. Concluding that no such change occurred, ALJ Evans rejected Plaintiff's claims for benefits.

After exhausting his administrative remedies, Plaintiff filed the instant action, and the matter is now ripe for review.

**III.   Analysis**

**A.    Standard of Review**

The Court's review is limited to determining whether the Commissioner's decision followed proper legal standards and whether the Commissioner's findings are supported

by substantial evidence . *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this deferential standard, courts will not substitute their judgment for that of the ALJ. *Id.* The Court does not resolve evidentiary conflicts or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Interpretations of statutes and agency regulations are questions of law, which the Court will review de novo. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

### B. The five-step process and the residual functional capacity

In deciding whether to award disability benefits, the ALJ must proceed through a five-step analysis. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). At step one, the ALJ determines whether the applicant is gainfully employed. 20 C.F.R. § 404.1520(b). At step two, the issue is whether the applicant suffers from any serious physical or mental impairments. *Id.* at § 1520©. Assuming the answer is yes, the ALJ then considers whether the applicant's impairments are among those listed in Social Security regulations, such that the applicant is presumed disabled. *Id.* at § 1520(d).

If a claimant's impairments fail to qualify as a listed impairment under agency regulations, the ALJ must then prepare a residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This RFC is used at both steps four and five of the decision making process. *Id.* at § 1520(a)(4). At step four, the ALJ decides, in light of the RFC, whether the claimant can perform any past relevant work. *Id.* at § 1520(a)(4)(iv). If so, then the claimant is not eligible for benefits. *Id.* If not, the ALJ then considers alternative work the claimant could do, and evaluates whether enough of that work exists in the national economy to preclude an award of disability benefits. *Id.* at § 1520(a)(4)(v). This determination at the fifth and final step is based in part on the RFC, which guides the ALJ

regarding the type of work the claimant might be able to perform. *Id.*

On appeal, Plaintiff advances four separate arguments: that his conditions qualify as a listed impairment under agency regulations–essentially, that the ALJ erred at Step 3; that the ALJ incorrectly relied on the medical-vocational guidelines; that the testimony of Plaintiff's girlfriend should have been considered but was not; and that the ALJ failed to evaluate the combined effects of Plaintiff's illnesses. (Doc. # 11-1, at 2).

Unfortunately, because the first ALJ's opinion was never appealed, the Court's hands are tied. Each of those arguments must fail, not because they lack merit when viewed in isolation, but because administrative res judicata as announced in *Drummond* prevented ALJ Evans–and the Court–from revisiting the first ALJ's opinion.

### C. ALJ Evans was unable to depart from the prior ALJ's determination

In his written opinion, ALJ Evans appeared to proceed through the sequential five-step analysis, considering *Drummond* and administrative res judicata only in constructing the RFC and at steps four and five. (*See* Doc. # 8-1, at 14). But *Drummond* applies to all steps of the administrative decision. Sixth Circuit case law makes clear that subsequent ALJs do not paint on a blank canvass. The subsequent ALJ is bound by the earlier determination unless new and material evidence is brought to bear. *Drummond*, 126 F.3d at 842. And "when a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey*, 1232-1233. In other words, despite the specific legal arguments Plaintiff has raised regarding the ALJ's decision, the question at the heart of the present matter is whether Plaintiff has shown a significant worsening of his condition. Unfortunately for Plaintiff, he has not.

Plaintiff's original memorandum reflects a misunderstanding of this heightened evidentiary burden.  For example, Plaintiff contends that the ALJ failed to evaluate the testimony of Ms. Ashley Douglas.  One lay witness with an obvious interest in the case doesn't force the ALJ to revisit a prior administrative decision, however.  Plaintiff points to 20 CFR § 416.929, which allegedly shows that unless the ALJ properly weighed Ms. Douglas's testimony, the ALJ's opinion lacks substantial evidence.  Section 416.929 provides nothing of the sort.  It does promise that the Commissioner will "consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning)."  20 C.F.R. § 416.929 para. (a).

As the Commissioner pointed out however, "considering" new evidence doesn't require an explicit credibility determination for every witness.  (Doc. # 12, at 8).  *See Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988) (holding that an administrative agency does not commit reversible error by failing to explicitly credit lay testimony, so long as the agency exhaustively analyzes the objective medical evidence).  Here, the ALJ's analysis of the objective medical evidence, along with the ALJ's summary of Ms. Douglas's testimony, suggests that the agency did, in fact, consider Ms. Douglas's testimony as required by regulations.  Further, Ms. Douglas's testimony is entirely consistent with the evaluation of consultative examiner Dr. Mark Burns.  (*See* Doc. # 8-1, at 353-56).  Though the ALJ could have done better–by, for instance, explaining how much weight he gave Ms. Douglas's opinion and why–his lack of explanation on this issue is not fatal.

Yet even if the ALJ's treatment of the evidence would justify reversal under normal circumstances, Plaintiff must show something more here–specifically, that his condition has materially worsened. The Court offered Plaintiff an opportunity to further brief this issue, and while Plaintiff chronicled some evidence of his worsened condition, that evidence did not justify a departure from the prior ALJ's opinion. Plaintiff discusses the testimonial evidence offered at the most recent ALJ hearing, for example. (Doc. # 14, at 3). The testimony of Plaintiff and his girlfriend do not constitute a material change in circumstances, and Plaintiff cites zero legal authorities suggesting the opposite. Further, while objective medical evidence indicated some reduction in lung functioning, (*see id.* at 2), Plaintiff himself admits that this reduction was not significant enough to trigger Listing 3.04(a). (Doc. # 14, at 2) ("[T]he 2011 scores *nearly* met the requirements of Listing 3.04(a).") (emphasis added). The testimony of interested parties, however, combined with mild deterioration in Plaintiff's lung function, is not the sort of "new evidence" that would have led to a "different disposition" of Plaintiff's claim. *See Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 647 (6th Cir. 2013) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).[1]

---

[1] This should not be taken as an endorsement of the agency's decision. In this case, the Court is struck by the lack of a thorough examination of Plaintiff's medical history. There is at least some evidence that Plaintiff's condition qualifies as a listed impairment under 20 CFR Part 404, Subpart P, Appendix 1, § 304(c). As Plaintiff notes, that section requires that a claimant establish 1) "persistent pulmonary infection...occurring at least once every six months" that 2) requires "intravenous or nebulization antimicrobial therapy." *Id.* at 304(c). Plaintiff documents a number of treatments taken through nebulization and a number of infections that he's suffered. (*See, e.g.*, Doc. # 11-1, at 4). Whether any of these treatments qualified as "antimicrobial" is uncertain, but this is precisely the problem: neither ALJ ever meaningfully engaged with Plaintiff's treatment history on this issue.

The government's argument illustrates this point well. In the Commissioner's brief, she argues that none of Plaintiff's drugs qualify as "antimicrobial." What the Commissioner does not, and cannot do, is point to a shred of evidence in the record to make this point. There is no

*Drummond* and its progeny are essentially fatal to Plaintiff's claim. As later Sixth Circuit cases make clear, the subsequent ALJ is bound by all elements of the prior ALJ's ruling. *See Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 515 (6th Cir. 2011) (holding that a subsequent ALJ is bound by the prior ALJ's findings, even those findings that were not essential to ultimate ruling).

## IV.   Conclusion

The Court sympathizes with Plaintiff's condition and with his obvious illness. However, because of Plaintiff's first unfavorable application for disability, Plaintiff must show that his circumstances have materially changed. Because he has failed to do so, his application cannot succeed.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 11) is **denied**; and Defendant's Motion for Summary Judgment (Doc. # 12) is **granted**.

---

medical testimony–written or otherwise–describing the drugs Plaintiff has taken, nor is there any discussion of these various drugs during the ALJ's hearing. There are, instead, a number of citations to pharmaceutical information Web sites like "medicinenet.com" and "healthcentral.com." It is a sad commentary on the ALJ's written opinion that the government must resort to the internet to make its point.

     As it happens, the Court can also use the internet, and it has found that at least one of Plaintiff's medications–tobi–"is used to treat people with a certain inherited condition (cystic fibrosis) who have a persistent lung infection with a certain bacteria." Neither ALJ ever discussed tobi, a "nebulization antimicrobial therapy" used to treat a "pulmonary infection." The ALJ instead notes: "Further, if [claimant] has persistent pulmonary infections accompanied by superimposed recurrent symptomatic episodes of increased bacterial infection occurring at least once every six months and requiring intravenous or nebulization microbial therapy, which is not this case." (Doc. # 8-1, at 14). The Court cannot make sense of this sentence. And it certainly doesn't show that some piece of substantial evidence supports the ALJ's opinion. If anything, it shows the opposite.

     The agency has a fundamental obligation here: when a claimant alleges that he suffers from a listed impairment, the ALJ must at least consider direct, clear evidence to that effect. Plaintiff's antibiotic treatment is part of the definition of the listed impairment, yet it goes unmentioned in either ALJ opinion. Thanks to *Drummond*, the Court cannot redress this error. Still, the Commissioner should avoid committing more like it in the future.

A Judgment shall be entered contemporaneously herewith.

This 20th day of June, 2014.


Signed By:
David L. Bunning  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\13-187 MOO.wpd